BETSY B. ROAN AND ANOTHER V. JAMES H. RAYMOND
AND OTHERS.

Where a certificate under the provisions of the Act of February 9th, 1850, for the relief of certain persons formerly prisoners of war in Mexico (Hart. Dig., Art. 2712) was issued to William H. Roan, who was decimated at Mier, and was delivered to the administrator of said Roan, who was appointed on the 29th of July, 1850, by whom it was assigned to another, who presented the same to the State Treasurer on the 5th of April, 1852, and received payment thereof, it was held in an action afterwards commenced against the Treasurer, by the heirs of said Roan, for the delivery of said certificate, and for mandamus to compel the payment thereof to them, to which action the administrator and assignee were made parties, that the action, as against the Treasurer, could not be sustained. *Quere,* whether a certificate, under the provisions of the Act of February 9th, 1850, for the relief of certain persons formerly prisoners of war in Mexico, is assets in the hands of the administrator of the volunteer, who was dead at the time of the passage of the Act, or enures to the benefit of his heirs then living. Where the plaintiff instituted suit in Travis for a mandamus against the State Treasurer, and made two others, who resided in distant counties, defendants also, praying for general relief, it was held that as the plaintiff was not entitled to any relief as against the Treasurer, he could not sustain his action in that county against the other defendants, although they had not pleaded their privilege to be sued in the county of their residence.

Appeal from Travis. Suit by Betsy B. Roan and Turner T. Roan, mother and brother of William H. Roan, and claiming to be the only heirs of said William against James H. Raymond, State Treasurer, William Ryan and Benjamin F. Atkins.

The suit was commenced August 10th, 1853, in Travis county. It was alleged that Ryan resided in Fort Bend, and Atkins in Brazoria, to which counties citations for said defendants were issued, and returned executed.

The object of the suit was to enforce the claim of the plaintiffs to the proceeds of a certificate which had been issued by the Auditor and Comptroller to the said William H. Roan, under the Act of February 9th, 1850, for the relief of certain persons, formerly prisoners of war in Mexico. (Hart. Dig.,

Roan v. Raymond.

Art. 2712.) Said Act provided, "That all the volunteers "captured at Mier and at Santa Fe, by the Mexican forces, "shall be entitled to receive pay at the rate of twenty-two "dollars and fifty cents per month, from the respective times "of their mustering into service, until one month after the time "at which the main bodies of said volunteers were released by "the Mexican Government; and it shall be the duty of the "Auditor and Comptroller to issue to each of said volunteers, "or his heirs or representatives claiming the same, a certificate "for the amount to which he may be entitled under the provis- "ions of this Act; and the further sum of sixty-five dollars to "each of said volunteers, as compensation for the loss of his "horse, arms and accoutrements, to be added to the amount "of pay aforesaid, and included in said certificate; which cer- "tificate shall be issued to the person, or persons, entitled to the "same, upon making proof as hereinafter required, and shall be "an audited par claim against the late Republic of Texas." This Act then prescribes the proof which shall be required of "any of said volunteers, or his heirs or representatives;" but such requisitions related only to pooof of the service, there-by leaving the proof of heirship, etc., to be determined as in like cases.

The petition alleged that William H. Roan had been taken prisoner at Mier and decimated. On the 29th of July, 1850, William Ryan, one of the defendants, was appointed adminis-trator of said Roan's estate, and took the oath and gave bond, as required by law. On the 24th September, 1850, the Audi-tor and Comptroller issued the following certificate, and de-livered it to the said Ryan.

No. 828.]        PUBLIC DEBT        [2d Class.
OF THE REPUBLIC OF TEXAS.

This is to certify that Wm. H. Roan has, under the provi-sions of an Act of the Legislature of the State of Texas, enti-tled "An Act to provide for ascertaining the Debt of the late Republic of Texas," approved 20th March, 1848, filed with the

Auditor and Comptroller a claim for services and losses sustained on the Mier expedition, amounting to six hundred and five dollars, which is sufficiently authenticated to authorize the auditing of the same, under the laws of the late Republic of Texas. The said claim, according to the data before us, is worth six hundred and five dollars in par funds, as having been at that rate so available to the Government. In testimony whereof," etc.

The certificate had an assignment on the back thereof, as follows :

For value received, I transfer the within claim of William H. Roan against the State of Texas, for six hundred and five dollars to Benjamin F. Atkins. October 7th, 1851.

WILLIAM RYAN,
Adm'r of the estate of Wm. H. Roan.

Assignment acknowledged before a notary.

On the 5th of April, 1852, Atkins received payment of the certificate, from James H. Raymond, State Treasurer.

The petition prayed judgment against Raymond for the delivery of the certificate, and a mandamus against him, as State Treasurer, to pay over said amount to the plaintiffs, and that Raymond have judgment against his co-defendants for the same amount. It also prayed judgment against Ryan and Atkins in favor of plaintiffs for $1,000 damage, and for general relief.

Raymond and Atkins answered separately by general demurrer and pleas to the merits. Ryan made default. The demurrers of Raymond and Atkins were sustained, the default as to Ryan set aside, and judgment rendered that the petition be dismissed ; that the defendants go hence without delay and recover their costs.

*G. W. Paschal*, for appellants. The objection partially made, but not insisted on in the Court below, that there was a misjoinder of parties, could not be taken upon general demurrer. In Equity causes, a misjoinder of parties might be reached by

demurrer, because, without such parties, complete justice could not be done. (Story's Eq. Pl., Ch. 4, Sec, 72, *et seq.*; Cooper's Eq. Pl., 33, 34; Calvert on Parties, Ch. 1, Sec. 1, pp. 1, 2; West v. Randall, 2 Mason, R. 190, 191.)

But under our system the objection would have to be pleaded, and it would have to be shown that to continue improper parties on the record would be to the prejudice of those really interested. In other words, that they had no interest in the controversy; the contrary whereof is admitted by the demurrer. (Johnson v. Davis, 7 Tex. R. 173.)

Ryan and Atkins were, therefore, properly joined, according to the rule often prescribed by the court, on the subject of *mandamus.* (Smith v. Power, 2 Tex. R. 5.)

In this case it is alleged that Raymond is in possession of an audited warrant—a thing worth its face value—which of right belongs to the plaintiffs. That he came into the possession by the improper and illegal combinations of the other defendants. It was, therefore, proper under our system, not only to pray for the recovery of the certificate, but also to make all who stand in the way of its payment parties, in order that they may show their right to it. In no way could this be so properly done as by adding the prayer for a mandamus to the prayer for specific recovery of the thing; and thus enabling the Court to do complete justice among all concerned.

The duty of the Treasurer was purely ministerial. He had only to pay out the money to the lawful holder of the certificate. And certainly it would be an alarming doctrine to say, that there is no appeal from the decision of the Treasurer, as to who is the lawful holder of the certificate.

If it be not disrespectful to this Court, after so much discussion upon the subject, and after some rules of limitation seem to have been settled by a series of decisions, we would venture again to suggest, that in applying any particular rule to the remedy by mandamus, by name, there is danger of being misled from the spirit of our constitution and judicial system.

If we would preserve harmony, we must proceed upon the single axiom, that whatever may be a party's rights, he may assert them by stating the true facts in a petition and praying for relief. If he designates his action by any common law name, and asks for any remedy by a common law term, it affords no reason why his right in Court should be limited by the common law construction of that remedy. Such a rule would raise up all the distinctions in practice, and lead us into a labyrinth of special pleading, which our constitution and laws so industriously avoid.

Whatever may be the opinion of this Court, as to the appropriateness of the remedy against Raymond, there is enough before it to give it jurisdiction ; and it is the desire of all concerned, and greatly to the interest of the State, that the law about these prisoners of war should receive a construction, and the rights of the parties be determined. Such a course will not only terminate the litigation in this case, but enable the Legislature to take whatever action justice may demand.

Here is no grant subject to a particular estate, or gift, or descent, subject to the charge of debts, as so well defined by this Court in the case of Fisk v. Norvell ; but it is the donation of an estate to a class of persons, with the understanding that the grant should not fail for want of such persons, but vest presently in the person entitled to receive the certificate then in being ; and we will now proceed to show that the person so entitled has always been held to be the next to kin.

And, secondly, That when wills, grants or other bequests, speak of heirs or representatives as legal representatives, the ordinary legal signification of those terms will be applied.— (Holloway v. Holloway, 5 Sumner's Vesey, 399 ; Lang v. Blackall, 7 Term R., 100 ; 3 Vesey, 468 ; 2 Williams' Executors, 820 to 832 ; Bridge v. Abbott, 3 Brown's C. C., 224 ; Horsepool v. Watson, 3 Vesey, 383.)

The most that can possibly be gathered from all the cases in favor of the defendants is, that the words " legal represen-

tatives," may have reference to the artificial representation granted by the Ecclesiastical Court ; or it may be intended to point out those who would take by the statute of distribution ; but the term representative never means an artificial representative, but the next of kin according to the statute of distribution.    (Lord Cranby v. Hall, 14 Vesey, 310 ; Ide v. Ide, 5 Mass. 500 ; Mowat v. Crow. 7 Paige, 328 ; Alexander v. Barfield, 6 Tex. R., 400.)

But should this view of the subject be rejected, there is another construction of the Statute which leads to the same result, and that is, that if the law had in contemplation such legal representatives as are artificial, they meant such as were then in *esse*, and such as should represent the volunteer who should afterwards die, and not such as were afterwards created for speculative purposes, to rob those already dead.

In this particular case the administration was a nullity, a fact which may be gathered as well from the answer as the petition.    (Fisk v. Norvel, 9 Tex. R. 13 ; Blair v. Cisneros, 10 Id. 34 ; Chandler v. Green, 11 Id.)

It may be said that the Treasurer could only look to the act and certificate of the Judge or Court having jurisdiction, and that although the Court may have erred, the administration affords a protection.    But no justification can be predicated of a nullity.    If too great time had expired, or if the facts were true as averred in the petition, the action of the Court was a nullity, and neither the Treasurer nor any one else is protected.    Why should an officer, any more than any one else, be protected by a nullity?    The assumption that the acts of a Court of competent jurisdiction over a subject matter within its jurisdiction cannot be impeached is a doctrine never tolerated in this Court—or, rather, it admits of many exceptions in this country ; so many that the exceptions are the rule, as shown in the class of cases last cited, and in the whole class of fraudulent land certificate cases.    (De Leon v. Young ; League v. Young, &c.)

*I. A. Paschal, T. H. Stribling* and *T. H. DuVal*, also, for appellants.

*A. J. Hamilton*, for Atkins. The objection as to the capacity of Ryan, presupposes that administration will not be allowed after the lapse of eight years. There is no such rule. Administration will be granted whenever there appears to be necessity for it. Nor would the objection be available against the defendant Raymond or Atkins. The Court, granting the letters, adjudicated the question of necessity for administration, and it was not for the State officer in the discharge of a ministerial duty, to question its acts ; and whatever may have been the irregularity of the administration—i. e. the act of the Court in granting the letters—the rights acquired by Atkins under this administration, are not to be disturbed by suit on the part of the heirs. Their remedy would be against the administrator and his securities on his official bond. (Evans v. Oakley, 2 Tex. R. 182.)

The exception interposed by the defendant Raymond, or by the Attorney General for and in his behalf, was properly sustained. Mandamus will not be awarded to compel an officer, or to control him, in the performance of an act where he has discretion, or may exercise his judgment. (Glascock v. Com. Gen. Land Office, 3 Tex. R. 51; Bracken v. Wells, Id. 88 ; Com. Gen. Land Office v. Smith, 5 Id. 471.)

It is unnecessary to argue that in the payment of the money, the Treasurer, under the law, necessarily exercised his discretion and judgment.

There was a misjoinder of parties, and in short it was a nondescript proceeding.

*Attorney General* and *J. C. Megginson*, also, for appellees.

LIPSCOMB, J. This suit was brought by the appellants, as the heirs of William H. Roan, one of the Mier prisoners, to

Roan v. Raymond.

recover the amount reported and certified by the Auditor and Comptroller, as due to the heirs or representatives of the said Roan. The circumstances we will briefly State. Roan, the deceased, was a private in Capt. Ryan's company, in the expedition, and died in Mexico. After the passage of the law for the relief of the prisoners taken in that expedition, Ryan took out letters of administration in the county of Fort Bend, and procured the certificate of the Auditor and Comptroller for the amount due to the said deceased. This certificate or warrant he assigned to Atkins, who presented the same to Raymond, the State Treasurer, by whom it was paid. This suit is brought against the present appellees, to recover the amount so paid, alleging that the administration to Ryan was void, and that the money so paid to the said Atkins was paid to their use, and also alleging the liability of said Raymond for the payment of the said amount, on the alleged ground, that he had no right in law to pay the said warrant to any person but to the heir of William H. Roan, deceased. There was a judgment for the defendants, from which the plaintiffs appealed.

As to the parties in this suit, if the liability of Raymond for the repayment of the money claimed, jointly with one or both of the other parties defendants, can be sustained, there is no legal objection to the suit being brought in this county, it being the county of Raymond's residence, and the other co-defendants could be brought in, as they were, by citation to them, running to their respective counties ; but if Raymond was not liable, and the others were, the suit cannot be sustained against them in this county, but ought to have been brought in the county of their residence, or the residence of one of them. We will therefore proceed to enquire into the liability of Raymond ; if he is not liable, the judgment must be affirmed, although the other defendants, or one of them, may be liable to pay the money to the plaintiffs.

The first Section of the Act of February 9th, 1850, entitled an Act for the relief of certain persons formerly prisoners of

war in Mexico, (Hart. Dig. Art. 2712,) fixing the amount to which such persons shall be entitled to receive, proceeds : "and "it shall be the duty of the Auditor and Comptroller to issue "to each of the said volunteers, or his heirs or representatives, "claiming the same, a certificate for the amount to which he may "be entitled under this Act ;" providing further, "which certifi- "cate shall be issued to the person or persons entitled to the "same, upon making proof as hereinafter required, and shall "be an audited par claim against the late Republic."

From the law cited, it would seem that the question as to who was entitled to receive the certificate, or to whom it should be delivered, was one to be decided by the Auditor and Comp- troller, and not by the Treasurer, and when presented by the assignee of Ryan, the administrator, it was not for him to enter into the investigation of the legality of the administration, nor the right of an administrator to receive the certificate, and his paying the amount, as Treasurer, could not render him person- ally liable, although it may be true that the heirs were entitled to the money, and that it should not be regarded as assets in the hands of the administrator. He could not be required to decide on the legal rights of the parties, at his peril, before paying the certificate, regarded, as it was required by law to be, as an audited par claim against the late Republic. . We shall not, in this case, decide whether the administrator or the heirs were entitled to receive the money. There can be no question, however, but that the administrator can be called upon to account to the heirs for the amount. If he could re- ceive it as assets in his hands, to be administered, and there should be no creditors, he would be compelled to pay it over to the heirs, after deducting the costs of the administration ; and if he could not so treat the funds, but it rightfully and legally went to the heirs, and not to creditors, he would be required to pay it over, as money collected for their use, with- out any regard to the administration, or any right to compen- sation for his trouble or reimbursement for costs of the admin-

Roan v. Raymond.

istration. But when called upon by suit, in either his representative character, or personally, the suit must be brought in his own county of residence. If, as before remarked, Raymond had been jointly liable, the suit could have been brought in this the county of Raymond's residence, and the Court could have sustained the proceedings against all jointly liable with him ; but, as he is not liable, the suit against the other defendants was improperly instituted in this county. Had the suit been brought in the county of Ryan's residence, the discharge of Raymond would not have prevented a judgment against Ryan, if he was liable. We make these remarks to show the grounds on which this suit cannot be sustained against Ryan, although he may be liable to the heirs. We are therefore of opinion that the Court below did not err in giving judgment in favor of the appellees, who were the defendants in the Court below, and the judgment is therefore affirmed. It cannot, however, prejudice the plaintiffs in any suit that they may institute against Ryan, because the merits of their claim against him has not been adjudicated.

*Judgment affirmed.*